DURIE TANGRI LLP
CLEMENT S. ROBERTS (pro hac vice)
croberts@durietangri.com
EUGENE NOVIKOV (pro hac vice)
enovikov@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone: 415-362-6666
Facsimile:  415-236-6300

MANNING CURTIS BRADSHAW &
BEDNAR LLC
Jess M. Krannich (Utah Bar No. 14398)
136 East South Temple, Suittest pde 1300
Salt Lake City, UT 84111-1135
Telephone: (801) 363-5678
Facsimile: (801) 364-5678
jkrannich@mc2b.com

*Attorneys for Defendant*
DITTO TECHNOLOGIES, INC.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| 1-800 CONTACTS, INC. d/b/a GLASSES.COM, a Delaware corporation and Utah d/b/a, <br><br>      Plaintiff, <br><br> vs. <br><br> DITTO TECHNOLOGIES, INC., a California corporation, <br><br>      Defendant. | **DEFENDANT DITTO TECHNOLOGIES, INC'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** <br><br> ORAL ARGUMENT REQUESTED <br><br> Judge David O. Nuffer <br><br> Case No. 2:13-cv-00145 |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Ditto Technologies, Inc., ("Ditto"), by and through undersigned counsel, hereby submits this Motion to Dismiss and Memorandum in Support.  For the reasons set forth below, Defendant respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice. Defendant also requests that the Court hold oral argument concerning Defendant's Motion to Dismiss.

**Table of Contents**

**Page**

INTRODUCTION………………………………………………….……..……........5

BACKGROUND……………………………………………………..………...5

    I.  1-800-CONTACTS BUYS THE '824 PATENT AND SUES DITTO……………........5

    II.  THE '824 PATENT……….………………………………………………… ...….6

ARGUMENT…………………………………………………………………….…11

    I.   THE GOVERNING LAW REGARDING PATENTABLE SUBJECT MATTER.....12

    II.  THE '824 PATENT CLAIMS UNPATENTABLE SUBJECT MATTER…………..15

        A.  The Claims Fail the Machine or Transformation Test…………………………...16

        B.  The Claims are Directed to an Abstract Idea …………………………………...20

        C.  The Remaining Claims are Identically Abstract………………………….......22

            1.  The other dependent claims are not patentable………………………………22

            2.  The dependent claims are not patentable either……………………………...24

        D.  No Claim Construction or Discovery is Necessary to Dispose of this Case……..25

CONCLUSION…………….……………………………………………………………25

**Table of Authorities**

Cases                                                                                                          Page

*Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.,*
   No. C–92–20643 RMW, 1994 WL 270714 (N. D. Cal. April 19, 1994)…………………….…..…...9

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada,*
     687 F.3d 1266 (Fed. Cir. 2012)…………………………………………………....................passim

*Burnett v. Mortg. Elec. Registration Sys., Inc.,*
   No. 1:09-CV-00069-DAK, 2009 WL 3582294 (D. Utah, Oct. 27, 2009)…………………….……..9

*Chipman v. Aspenbio Pharma, Inc.,*
   No. 11-cv-00163-REB-KMT, 2012 WL 4069353 (D. Co. Sept. 17, 2012)……………………………9

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011)……………………………………………….…....... passim

*Dealertrack, Inc. v. Huber,*
   674 F.3d 1315 (Fed. Cir. 2012)……………………………………………………...passim

*Diamond v. Diehr,*
   450 U.S. 175 (1981)……………………………………………………………………13, 14

*Eakin Enterprises, Inc. v. Specialty Sales LLC,*
   No. 1:11-CV-02008-LJO-SKO, 2012 WL 2445154 (E. D. Cal. June 26 2012)…………………………9

*Fort Properties, Inc. v. American Master Lease LLC,*
   671 F.3d 1317 (Fed. Cir. 2012)……………………………………………….……………14, 15, 23

*In re Alappat,*
   33 F.3d 1526 (Fed. Cir. 1994)…………………………………….............................................24

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008),
   *aff'd Bilski v. Kappos*, 130 S. Ct. 3218 (2010)………………………………… ……………..passim

*Markman v. Westview Instruments, Inc.,*
   52 F.3d 967 (Fed. Cir. 1995)……………………………………………............................................25

*Mayo Collaborative Services v. Prometheus Labs., Inc.,*
   132 S. Ct. 1289 (2012)……………………………………………………... ……………...passim

*OIP Technologies, Inc. v. Amazon.com, Inc.,*
   No. C-12-1233 EMC, 2012 WL 3985118 (N. D. Cal. Sept. 11, 2012)……………………......11, 24, 25

*Parker v. Flook*,
   437 U.S. 584 (1978)……………………………………………………………………11, 19

*RB Rubber Prods, Inc. v. ECORE Int'l., Inc.*,
   No. 3:11-cv-319-AC, 2012 WL 860416 (D. Or. March 13, 2012)…………...........................................9

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010)…………………………………………………………………11

*Uniloc USA Inc., et al. v. Rackspace Hosting, Inc., et al*,
   No. 6:12-CV-375, Dkt. No. 38 (E.D. Tex. March 27, 2013)………………………………………11, 25

## **Statutes**

35 U.S.C. § 101…………………………………………………………………………………passim

## **Rules**

Fed . R. Evid. 201……………………………………………………………………………….....9

Fed. R. Civ. P. 12(b)(6)………………………………………………………………………..1

## INTRODUCTION

Section 101 of the Patent Act, 35 U.S.C. § 101, and United States Supreme Court and Federal Circuit cases decided thereunder make clear that patent law protects concrete inventions, not abstract ideas.  The patent asserted in this case does not claim any new technology, but rather the abstract idea of demonstrating eyeglasses to users over a network.  Its claims are not directed to any specific machine, do not transform an article to another state or thing, and can be performed entirely in the mind, or with pencil and paper.  Indeed, its specification makes clear that the inventors intended to claim as their property—not any innovative way of programming or even using a computer—but rather the sheer abstract concept of demonstrating eyeglasses remotely, in three dimensions.  Because the patent-in-suit claims only abstract ideas, the claims at issue are invalid as a matter of law, and this case should be dismissed with prejudice.

## BACKGROUND

### I.   1-800-CONTACTS BUYS THE '824 PATENT AND SUES DITTO.

Defendant Ditto Technologies, Inc. is a small online start-up founded in February 2011 and based in Mountain View, California.  Ditto's website, www.ditto.com, is an online store that lets a customer use his computer's camera to model various pairs of eyeglasses available for sale on a rotating image of his face, allowing him to see how the glasses fit and look on him.  The customer can save the image of himself wearing the glasses (called a "ditto") and send it to others.  He can then, if he wants to, order his choice of glasses directly on the site.  *See* www.ditto.com.

Plaintiff 1-800 Contacts, Inc. was founded in 1995 and operates a network of websites and online stores that sell eyewear, including Contacts.com, Glasses.com, and 1800contacts.com.

Plaintiff does not allege that it currently offers Ditto's functionality of permitting a customer to virtually "try on" a pair of eyeglasses.

Ditto's website launched on April 17, 2012.  According to the public records of the United States Patent and Trademark Office ("PTO"), Plaintiff acquired the asserted patent in this case, U.S. Patent No. 7,016,824 ("the '824 patent") less than a month later, on May 23, 2012, from an unrelated company called Image Metrics, Inc.[1]  This lawsuit was filed some eight months after *that,* on February 26, 2013.  Compl., Dkt. No. 2.  In other words, Plaintiff saw Ditto's technology and entry into the market, and went shopping for a patent that it could use to force Ditto out of business.[2]

## II.    THE '824 PATENT.

Plaintiff's Complaint accuses Ditto of directly and indirectly infringing unspecified claims of the '824 patent by using an "interactive 3D VTO platform" that "enables consumers to virtually try on eyeglasses in an interactive environment."  Id. at ¶¶ 9, 13-14.  No other description of Ditto's allegedly infringing activities is provided.

Claim 12 of the '824 patent is typical:

---

[1] Ex. A, USPTO Patent Assignment Abstract of Title, Patent # 7016824, *available at* http://assignments.uspto.gov/assignments/q?db=pat&qt=pat&reel=&frame=&pat=7016824&pub=&asnr=&asnri=&asne=&asnei=&asns=.

[2] Plaintiff has a history of filing patent and trademark infringement lawsuits in federal court against small perceived competitors like Ditto.  For just a few recent examples, see, e.g., *1-800 Contacts, Inc. v. Watchdog Group, LC d/b/a/ Lensalert!*, 2:11-cv-00130-TS (D. Utah, filed Feb. 1, 2011);  *1-800 Contacts, Inc. v. Web Eye Care*, 2:10-cv-00770-DAK (D. Utah, filed Aug. 10, 2010);  *1-800 Contacts, Inc. v. Standard Optical Company*, 2:10-cv-463-PMW (D. Utah, filed July 13, 2010);  *1-800 Contacts, Inc. v. Contact Lens King, Inc.*, 2:10-cv-00205-DAK (D. Utah, filed March 8, 2010);  *1-800 Contacts, Inc. v. Empire Vision Center, Inc., d/b/a Lens123*, 2:10-cv-00173-DAK (D. Utah, filed Feb. 25, 2010);  *1-800 Contacts, Inc. v. Arlington Contact Lens Service, Inc., d/b/a Discount Contact Lenses*, 2:10-cv-131 (D. Utah, filed Feb. 18, 2010);  *1-800-Contacts, Inc. v. Lensfast LLC*, 2:08-cv-00984-DAK (D. Utah, filed Dec. 23, 2008).

A method for commercializing pairs of eyeglasses over a network, the method comprising:

[a] displaying on a display screen of a computing device an interactive platform received from the network, wherein the interactive platform includes respective 3D representations of the pairs of eyeglasses;

[b] importing into the interactive platform a 3D face model of a user;

[c] placing a 3D representation of one of the pairs of eyeglasses onto 3D face model when the one of the pairs of eyeglasses is selected on the display screen.

Compl., Dkt. 2, Ex. A (hereinafter cited simply as "'824 patent"), at Claim 12.

Claim 1 breaks the same process down into more discrete steps:

A method for commercializing pairs of eyeglasses over a network, the method comprising:

[a] providing an interactive platform that can be displayed on a computing device;

[b] requesting a 3D face model from a user to be used in the interactive platform;

[c] determining characteristics of the 3D face model with respect to a 3D reference frame;

[d] retrieving a 3D representation of a pair of eyeglasses when a request identifying the pair of eyeglasses is received over the network;

[e] and placing the 3D representation of the glasses onto a default position with respect to the 3D face model in accordance with the characteristics thereof.

*Id.* at Claim 1.

Reduced to its essentials, the alleged invention consists of showing the user "representations" of eyeglasses, and then superimposing those representations onto a "3D face model" of the user. The end result, according to the patent specification, could look like this:



*Id.* at Fig. 6D.  However, the claims are not limited to this sort of interface – and indeed, neither the claims nor the specification provide the reader with any specific ways to program the software depicted.  Instead, the patent broadly claims any method of demonstrating glasses using a 3D face model over a network.  The only part of the claim that hints at a user interface is the requirement that the claims be implemented on an "interactive platform" – but "interactive platform" is a term broad enough to mean almost anything.

The other independent claims describe the same alleged invention in slightly different ways, for example recasting the claim as a "system" with a "client computing device" and a "server computing device" (claim 25), or as a "software product" where the various steps are performed using "program code" (claim 29).  And the dependent claims recite additional limitations that are largely non-inventive, trivial and/or redundant, such as specifying that the

"network" of the independent claim is the "Internet" (claim 14), or that the 3D face model

includes the positions of pupils and the nose (claim 17).

During prosecution of the '824 patent, the examiner rejected an earlier version of claim

12 as unpatentable under 35 U.S.C. § 101 – precisely the grounds on which this motion is

brought.  In order to get the claim to issue, the patentee added the words "on a display screen of a

computing device" to step [a] of the claim, and the words "on the display screen" to step [c].[3]

Ex. B, '824 Patent File History, at July 6, 2005 non-final rejection, p. 2 (p. 538 of exhibit); *Id.* at

July 14, 2005 claim amendment, pp.3-4 (pp. 544-45 of exhibit).

The examiner also rejected all of the claims as anticipated by a prior-art patent that taught

a method of commercializing pairs of eyeglasses over a network.  *Id.* at Sept. 15, 2004 non-final

rejection, at pp. 5-11 (pp. 490-96 of exhibit).  The patentee convinced the examiner to issue the

claims by arguing that the prior-art patent in question only used two-dimensional images of a

user as opposed to a "3D face model."  *Id.* at Oct. 23, 2004 claim amendment and accompanying

remarks, pp. 13-16 (pp. 516-519 of exhibit).  When the examiner allowed the claims, he noted

[3] Defendant requests that the Court take judicial notice of the publicly available USPTO file
history for the asserted patent, as well as the patent ownership records referenced in footnote 1,
*supra*. Patent office public records "can be accurately and readily determined from sources
whose accuracy cannot reasonably be questioned" under Federal Rule of Evidence 201– in this
case, the file history obtained from the USPTO's website, http://portal.uspto.gov/pair/PublicPair.
Accordingly, they are the types of documents that can be judicially noticed on a motion to
dismiss.  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, No. 1:09-CV-00069-DAK, 2009 WL
3582294, at *6 (D. Utah, filed Oct. 27, 2009) (documents capable of accurate and ready
determination by resort to official government records judicially noticeable).  In particular,
courts may take judicial notice of the USPTO's public records of the application proceedings
which issued into the subject patent.  *Eakin Enterprises, Inc. v. Specialty Sales LLC*, No. 1:11-
CV-02008-LJO-SKO, 2012 WL 2445154, *4 (E. D. Cal. June 26 2012); *Chipman v. Aspenbio
Pharma, Inc.*, No. 11-cv-00163-REB-KMT, 2012 WL 4069353, at *2 (D. Co. Sept. 17, 2012);
*RB Rubber Prods, Inc. v. ECORE Int'l., Inc.*, No. 3:11-cv-319-AC, 2012 WL 860416, at *5 (D.
Or. March 13, 2012) (*citing Applied Materials, Inc. v. Advanced Semiconductor Materials
America, Inc.*, No. C–92–20643 RMW, 1994 WL 270714, at *2 (N. D. Cal. April 19, 1994).

that the supposedly "patentable distinction" in all of the independent claims was the inclusion of the various "3D face model" limitations.  *Id*. at notice of allowance, p. 1 (pp. 583 of exhibit).

Notably, those claim limitations do not actually include the details of how the 3D face model is created or used.  All the claims require is that the 3D face model be "requested," its characteristics "determined," and that the representation of the glasses be "placed" on it.  And the specification defines "3D face model" as a representation in which "the item is represented graphically in 3-dimensions."  '824 patent, at 5:56-57.  The invention thus consists simply of superimposing a 3D representation of eyeglasses over a 3D picture of a face.

Reading the specification makes clear why the claims do not include any information about *how* a 3D model of a user's face is created, or how a 3D representation of eyeglasses is combined with the 3D face model for display to the user:  that technology is not the subject of the patent, and the inventors are agnostic as to how that process is carried out.  The specification states that "[t]he 3D representation of the item is preferably generated in advance by one of the settings provided below or through a 3D modeling service such as Geometrix, Inc. (see www.geometrix.com)."  *Id*. at 5:57-60.  Later, the specification briefly describes the process that may be used to generate the 3D model, and refers the reader to a prior art patent application for a "detail description" of the "3D modeling application." *Id*. at 6:24-43.  Still later, it states that "[t]here may be other ways or tools that can be used to generate a fully-textured 3D model of an object that includes a human being or an article.  ***What is important herein is the use of such 3D models to support electronic commerce over a network***."  *Id.* at 7:3-7 (emphasis added).

## ARGUMENT

"Whether a claim is drawn to patent-eligible subject matter under [Section] 101 is a threshold inquiry" and "an issue of law." *In re Bilski*, 545 F.3d 943, 950, 951 (Fed. Cir. 2008), *aff'd Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010); *see also Parker v. Flook*, 437 U.S. 584, 593 (1978); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010).  District courts may determine whether claims are directed to patentable subject matter early in litigation, including prior to claim construction.  *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).  Indeed, a number of district courts have taken up Section 101 issues at the motion to dismiss stage.  *See, e.g.*, *OIP Technologies, Inc. v. Amazon.com, Inc.*, No. C-12-1233 EMC, 2012 WL 3985118, *12 (N. D. Cal. Sept. 11, 2012) (plaintiff's complaint failed to state claim because patent-in-suit "describes an abstract idea of price optimization and is therefore patent-ineligible")  *Uniloc USA Inc., et al. v. Rackspace Hosting, Inc., et al*, No. 6:12-CV-375, Dkt. No. 38 (E.D. Tex. March 27, 2013) (claims at issue were directed to an unpatentable mathematical formula as a matter of law).

This Court should likewise adjudicate the Section 101 issues now, on Ditto's Motion to Dismiss.  The issues regarding whether the '824 patent passes muster under Section 101 are purely legal and require no claim construction.  Furthermore, Ditto is a small start-up company with minimal resources, which has been sued in a district far from its home (based on total Utah sales of only a handful of eyeglasses).  It cannot afford extended litigation on a patent that Plaintiff purchased for the purpose of driving Ditto out of business.  Deferring resolution of the threshold Section 101 issues may, as a practical matter, hand Plaintiff a victory not on the merits,

but for purely monetary reasons.  Ditto therefore respectfully requests that the Court adjudicate

the threshold Section 101 issues now, and dismiss Plaintiff's Complaint with prejudice.

## I.        THE GOVERNING LAW REGARDING PATENTABLE SUBJECT MATTER.

Section 101 of the patent act provides that "[w]hoever invents or discovers any new or

useful process, machine, manufacture, or composition of matter, or any new and useful

improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of

this title."  35 U.S.C. § 101.  The Supreme Court has held that this provision contains an

important implicit exception:  one cannot patent laws of nature, mental processes, or abstract

intellectual concepts.  *Mayo Collaborative Services v. Prometheus Labs., Inc.,* 132 S. Ct. 1289,

1293 (2012).  This is so because patent law is directed at inventions rather than the underlying

ideas that form the basis for scientific and technological progress.  *Id.*

In determining the contours of patentability, courts have distinguished between "laws of

nature, physical phenomena, and abstract ideas" and their *concrete application* in a useful real-

world context.  *Bancorp*, 687 F.3d at 1275-76.  To assist this analysis, the Federal Circuit

developed the "machine or transformation" test:  whether a claimed process is (1) tied to a

particular machine or apparatus; or (2) transforms a particular article into a different state or

thing.  *In re Bilski*, 545 F.3d at 954.  If either prong of the test is met, the process is patent-

eligible.  If neither prong is met, the process is impermissibly abstract.  On review, the Supreme

Court endorsed the machine-or-transformation test as a "useful and important clue," but not the

sole inquiry in determining whether a process is patent-eligible.  *Bilski*, 130 S. Ct. at 3227.  The

Court emphasized the need to determine whether the patentee is trying to monopolize an abstract

idea to "wholly pre-empt" its use in all fields of science and technology.  *Id.* at 3230-31.

Two years later, the Supreme Court decided *Mayo*, holding unpatentable a method of "optimizing therapeutic efficiency" for treatment of a certain disorder.  The Court decided that the claim merely recited a law of nature, with no "additional features that provide practical assurance that the process is more than a drafting effort designed to monopolize the law of nature itself."  *Id*. at 1297.  The only additional steps recited in the claim (such as "administering" the drug and "determining" the concentration of a metabolite in the patient's blood) involved "well-understood, routine, conventional activity previously engaged in by scientists." *Id*. at 1298.  The claims were little more than instruction to doctors to apply the law of nature, and so the patent did not add anything *novel* to the unpatentable law of nature.  This was consistent with the Supreme Court's prior holding that adding insignificant post-solution activity to an unpatentable idea does not save a claim from unpatentability.  *Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981).  Thus, the law is clear that in determining whether a claim is directed to patentable subject matter, courts look to whether the innovation of the claims – not any previously-known, post-solution step – is directed to a machine, transformation, or concrete application.

Since *Bilski*, the Federal Circuit has routinely applied Section 101 to invalidate patents that attempt to claim processes executed by computer software – like the claims at issue in this case.  For instance, in *CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366 (Fed. Cir. 2011), the court rejected a claimed "method for verifying the validity of a credit card transaction over the Internet."  *Id*. at 1370.  The court found that the claim did not meet the transformation prong of the machine-or-transformation test because it was directed merely to the "collection and organization of data regarding credit card numbers and Internet addresses."  *Id*. And the claim failed the machine prong because the Federal Circuit was "not persuaded by the appellant's

argument that the claimed method is tied to a particular machine because it 'would not be possible without the Internet.'"  *Id*. (citation omitted).  The Internet, the court held, "cannot perform the fraud detection steps of the claimed method," and was merely incidental to those steps.  *Id*.  Thus, the court found the claim to be an unpatentable mental process that could be performed by a human using a pencil and paper.  *Id*. at 1372-73.

Similarly, in *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1330-34 (Fed. Cir. 2012), the court considered a claim for a "computer aided method of managing a credit application." *Id*. at 1331.  The Federal Circuit held that despite the claim reciting a "computer aided method" involving several computer devices interacting over a network, the claims were "invalid as being directed to an abstract idea preemptive of a fundamental concept or idea that would foreclose innovation."  *Id*. at 1333.  In particular, the claim merely "explain[ed] the basic concept" of processing information through a clearinghouse, without "requir[ing] a specific application" or being "tied to a particular machine."  *Id*. at 1333-34.  The court noted that "[s]imply adding a 'computer aided limitation' to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible."  *Id*. at 1333.  Nor was the claim rendered patent-eligible by the fact that the abstract idea at its core was limited to one field of use (the car loan application process).  *Id*. at 1334.  An abstract idea does not become patent-eligible merely by virtue of the patentee limiting the patent's reach to a particular technological use.  *Id*. at 1334 (citing *Diamond v. Diehr*, 450 U.S. 175, 192 n.14 (1981); *see also Fort Properties, Inc. v. American Master Lease LLC*, 671 F.3d 1317, 1323-24 (Fed. Cir. 2012) (claims' requirement of "using a computer," where that meant nothing more than "operating an electronic device that features a central processing unit," did not impose meaningful limits on claims' scope); *Bancorp Services*, 687

F.3d at 1278 ("To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not. Thus . . . the limitation 'using a computer' in an otherwise abstract concept [does] not play a significant part in permitting the claimed method to be performed.")

## II.    THE '824 PATENT CLAIMS UNPATENTABLE SUBJECT MATTER.

The claims at issue in this case are no better than the claims in *CyberSource*, *Dealertrack*, *Fort Properties*, and *Bancorp*.  They fail the machine-or-transformation test because they are directed to the abstract idea of remotely demonstrating eyeglasses using 3D graphics.  The '824 patent purports to prevent anyone from providing a 3-D online demonstration of the way a pair of eyeglasses would look on a user's face, no matter how such a demonstration is programmed or implemented.  Patents are meant to protect inventions – specific solutions to specific problems – not to preempt entire concepts like these claims attempt to do.

Indeed, during prosecution of the claims, the patent examiner agreed that the claims were directed at an unpatentable abstract idea.  The applicant's original claim 12, as it was first presented to the examiner, expressed the basic concept:

> A method for commercializing pairs of eyeglasses over a network, the method comprising:
>
> [a] displaying an interactive platform received from the network, wherein the interactive platform includes respective displays of the pairs of eyeglasses;
>
> [b] importing into the interactive platform a 3D face model of a user;
>
> [c] placing a 3D representation of one of the pairs of eyeglasses onto 3D face model when the one of the pairs of eyeglasses is selected.

Ex. B, '824 patent file history, at application, p. 36 (p. 39 of exhibit).  The examiner rejected this claim as unpatentable under Section 101.  *Id*. at July 6, 2005 non-final rejection, p. 2 (p. 538 of

exhibit).  The patentee then added only the words "on a display screen of a computing device" and "on the display screen," and the patent office issued the claim.  *Id.* at July 14, 2005 claim amendment, pp. 3-4 (pp. 544-545 of exhibit); compare '824 patent at 14:10-20.

This generic verbiage reciting a general-purpose computer may have been enough to pass muster in 2005, but it is not enough today.  The Federal Circuit has since clarified that "[t]o salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention," facilitating the process in a way that a person making calculations or computations could not.  *Bancorp Services*, 687 F.3d at 1278.  Simply reciting "using a computer," which is all the language added to the '824 patent does, is insufficient.  *Id.*  The law also requires that the patentable concrete application of an abstract idea be the innovation that comprises the invention, rather than insignificant post-solution activity.  *Mayo*, 132 S. Ct. at 1298.  The claims here fail that test as well.  Because the meaning of the claims is clear, and does not turn on claim construction or discovery, the Court should dismiss this case with prejudice.

### A.    The Claims Fail the Machine or Transformation Test.

The machine-or-transformation test is a "useful and important clue" for determining whether a claimed process is patent-eligible.  *Bilski*, 130 S. Ct. at 3227.  The test asks first whether the process is "tied to a particular machine or apparatus" (the machine prong), and second, whether the process "transforms a particular article into a different state or thing" (the transformation prong).  *In re Bilski*, 545 F.3d at 954.

The transformation prong is easily disposed of.  At best, claims 1 and 12 receive and (if read generously) manipulate graphics.  No article is transformed into a different thing.  In *CyberSource*, the act of "constructing a map of credit card numbers" was held insufficient to

satisfy the transformation prong because "the mere collection and organization of data" is not a "transformation." *CyberSource*, 654 F.3d at 1370.  So too, requesting a 3D face model from a user, determining its characteristics, retrieving a 3D representation of a pair of eyeglasses, and juxtaposing the 3D representation over the face model is not a "transformation."

Nor are the claims tied to a particular machine.  The only machine-related limitation of claim 1 is the generic recitation of "providing an interactive platform that can be displayed on a computing device."  And even that claim element does not require a computer – merely an interactive platform that can be displayed on a computing device.  "Interactive platform" is a *broader* term than "computer."  It would be met by, for example, a Mr. Potato Head doll, which is interactive (since you can manipulate its body parts – and its eyeglasses) and perfectly capable of being displayed on a computing device using, say, a digital camera.

None of the other limitations, which contain the substance of the alleged invention, purport to require a computer at all; they can be performed on pencil and paper, or with the human mind.  Notably, the requirement of a "3D face model" does not entail a computer:  the specification makes clear that "3D face model" simply means that "the item is represented graphically in 3-dimensions."  '824 patent at 5:54-57.  Thus, by the patent's own terms, one could "request[]" a 3D face model by asking someone to draw a 3-dimensional graphical representation of a face, determine its characteristics by looking at it, retrieve a 3D representation of a pair of eyeglasses by obtaining another drawing, and place the 3D representation of the glasses onto a default position with respect to the 3D place model by positioning the latter drawing on top of the former.  *See Id*., claim 1.



To the extent that limitations like "determining characteristics of the 3D face model with respect to a 3D reference frame" seem challenging by hand, that is because they simply claim a mathematical operation: determining the coordinates of certain facial features. *CyberSource* is instructive: there, the Federal Circuit held that "constructing a map of credit card numbers" to verify the validity of a credit card transaction, while something that arguably needs a computer to be done *efficiently*, could be done with pencil and paper following the instructions of the claim as drafted. *CyberSource*, 654 F.3d at 1370-71. So too here, the claimed steps can be implemented with pencil and paper or a wooden block and a chisel, in combination with the human brain.

And one cannot patent a mathematical operation by itself, nor with trivial post-solution activity appended to it.  *CyberSource*, 654 F.3d at 1371.

Even if "providing an interactive platform that can be displayed on a computing device" is read as requiring a computer to perform the method, the bare recitation of a general purpose computer does not suffice to tie a claim to a particular machine.  *Bancorp*., 687 F.3d at 1277-78 (simply reciting a general-purpose computer "fails to circumvent the prohibition against patenting abstract ideas and mental processes").  The same is true of claim 12, which requires "displaying" the interactive platform "on a display screen of a computing device."  These limitations do not say what kind of computer to use or how to program it; they do not even require that the entire method be performed on a computer.  And they have no inventive content, since the prosecution history is clear that the claims were allowed due to the limitations that include a "3D face model" requirement – which itself is not tied to any machine.  See *Mayo*, 132 S. Ct. at 1297-98 (Section 101 patentability analysis focuses on inventive components of claims).

The fact that the computer-related limitations were added to claim 12 as an afterthought and are not the core of the patentee's invention further demonstrates that the claims are not genuinely tied to any particular machine.  As the Supreme Court has said, a "competent draftsman could attach some form of post-solution activity to almost any" abstract idea.  *Parker*, 437 U.S. at 590.  That is precisely what happened here.  The patentee took what the patent examiner had decided was an abstract idea, and added "do it on a computer" to (some of) the claims.  That does not render the invention patentable.  *Dealertrack, Inc*., 674 F.3d at 1333.

**B.      The Claims are Directed to an Abstract Idea.**

The Supreme Court and the Federal Circuit also instruct courts to consider whether the

claims at their core attempt to "wholly pre-empt" the use of an abstract idea – whether the patent

is not on a particular invention, but on the idea itself.  *Bilski*, 130 S. Ct. at 3230-31.  The '824

patent claims the abstract idea of remotely demonstrating eyeglasses in three dimensions over a

network, without specifying how that idea is to be implemented:  with what software, on what

hardware, and in some cases even whether it is to be implemented on a computer at all.  If these

claims are valid as drafted, no one can offer a 3D demonstration of eyeglasses on a user's face,

regardless of how they might program or design a system to do it – whether with a mall kiosk, a

Java applet on a website, or 3D-printed mannequins.  The methods claimed here are no better

than the "computer aided method of managing a credit application" held unpatentable in

*Dealertrack* or the "method for verifying the validity of a credit card transaction over the

Internet" rejected in *CyberSource*.  They all attempt to remove an abstract concept from the

public domain.

This is evident from the specification, which makes clear that the inventors were

concerned not at all with the technological details of how the ideas they claim are to be

implemented.  The "3D face model" of the claims is not an innovative technological solution to

the problem of how to create an accurate and manipulable computerized representation of a

human face.  The creation of the model itself is done "in advance" of performing the claimed

methods ('824 patent at 5:58), and the specification instructs the reader to use prior-art tools to

do it.  *Id*. at 5:57-60, 6:24-43, 7:3-7.  The specification simply handwaves through the process of

"placing the 3D representation of the glasses" onto the 3D face model.  At first it notes simply

that an "integration process" is performed to "combine the 3D representation of the item with the uploaded 3D model of the object and then present them in an interactive environment for the user to continue." *Id.* at 8:25-30. Later, the specification offers a single paragraph that says that it is possible to assign coordinates to the eyes and nose of the face model and then says that the coordinates are "useful" for orienting the glasses on the 3D face. *Id.* at 10:41-61.

Instead, the specification states that "[w]hat is important herein" is not the technological solution to the problem of creating a 3D model of a human face or a pair of eyeglasses, but rather "the use of such 3D models to support electronic commerce over a network." *Id.* at 7:3-7. That is precisely the problem. The notion of using 3D models to support electronic commerce over a network is not patentable, but a fundamental concept that the patentee is trying to preempt. Like the patentees in *CyberSource* and *Dealertrack*, the patentee here cannot patent "the use of 3D models to support electronic commerce over a network" without having invented a particular machine-implemented way of doing so. *CyberSource*, 654 F.3d at 1370; *Dealertrack*, 674 F.3d at 1331-32.

Had the patentees here come up with a novel way of constructing a computerized 3D model of a human face, they might have had a patentable invention. Had they come up with a particular computerized interface for demonstrating eyeglasses using a web browser and a digital camera, they might have had a patentable invention. But these claims are not tied to any specific technology or implementation. They claim an abstract concept—in the patent's own words, "the use of . . . 3D models to support electronic commerce over a network." The governing Supreme Court and Federal Circuit case law on patentability is clear that this is impermissible.

### C.      The Remaining Claims are Identically Abstract.

#### 1.      The other dependent claims are not patentable.

None of the remaining independent claims is sufficiently different from claims 1 and 12

to be patentable.   In particular, none claim an innovation that is tied to a particular machine or is

a concrete application of anything—as with the claims 1 and 12, the only concrete steps they

recite constitute trivial post-solution activity.  *Mayo*, 132 S. Ct. at 1298.  Claim 22 is another

method claim that adds only the requirement of "two views" as part of the interactive platform,

which was not inventive.   And claims 25 and 29 are identically abstract even though they are not

drafted as process claims on their face.  As the Federal Circuit held in *CyberSource*, 654 F.3d at

1374, the relevant question for purposes of determining whether a claim is directed to an abstract

idea is the underlying invention, not the terms in which the claim is cast.  Where an apparatus

claim is "broad" and "functionally defined," it would "exalt form over substance" to treat it as an

apparatus when determining its patentability under Section 101.  *Id*.

System claim 25, for example, recites precisely the same invention as claims 1 and 12,

but adds a lot of words to express merely the insignificant post-solution activity of "doing it on

the Internet."   The claim reads:

> A system for commercializing pairs of eyeglasses over a network, the system
> comprising:
>
> [a] a client computing device including a display screen, executing a browsing
> application and coupled to a data network;
>
> [b] a server computing device operated by an eyewear business, the server
> computing device accessing a database of the pairs of eyeglasses;
>
> [c] and wherein the client computing device, in response to an IP address
> identifying the server computing device, sends out a specification of a selected

> pair of the pairs of eyeglasses after a data link is established between the client and server computing devices;
>
> [d] wherein the client computing device subsequently displays an interactive try-on platform in which a 3D face model of a user and a 3D representation of the selected pair of eyeglasses are displayed;
>
> [e] and wherein the user is able to virtually place the selected pair of eyeglasses on or off the 3D face model.

'824 patent at Claim 25.  Limitations [a] and [b] recite nothing more than the notion of client and server device connected to a network.  And the rest of the limitations add only the fact that the client device sends the server a request for the user's eyeglass selection "in response to an IP selection identifying the server computing device":  in other words, as a request over the Internet or some other network.  There is nothing whatever inventive about these additional limitations.

As the Supreme Court has explained, the prohibition against patenting abstract ideas cannot be circumvented by attempting to confine the idea to a "particular technological environment" or by adding "insignificant post solution activity."  *Bilski*, 130 S. Ct. at 3230.  So in *Fort Properties*, 671 F.3d at 1323-24, the Court held that the requirement that a task be performed by a computer – where all that meant was "operating an electronic device that features a central processing unit" – was such a broad and general limitation that its addition to claims otherwise covering an abstract concept was "simply insignificant post-solution activity."  And in *CyberSource*, the fact that the claim recited performing certain steps of the method "over the Internet" was not sufficient to render the claim patentable because the Internet was not integral to what the patentee had actually invented.  *CyberSource*, 654 F.3d at 1370.

Claim 29 is directed to a "software product" with every limitation beginning with the words "program code for" but otherwise reciting precisely the same steps as method claim 1. '824 patent at Claim 29.  Just as in *CyberSource*, therefore, it claims a process with a series of

"functionally defined" steps and literally no structural limitations beyond "a computer readable medium executable on a computing device."  It is thus identical to claim 1 for purposes of the Section 101 analysis, and is likewise unpatentably abstract.

### 2.       The dependent claims are not patentable either.

The dependent claims all add steps constituting trivial post-solution activity that cannot serve to render the invention patentable.  *Bilski*, 130 S. Ct. at 3231 (dependent claims "limiting an abstract idea to one field of use or adding token postsolution components" not patent-eligible); *In re Alappat*, 33 F.3d 1526, 1540 n.14 (Fed. Cir. 1994), abrogated on other grounds, *In re Bilski*, 545 F.3d 943, 959 (Fed. Cir. 2009) (noting that insignificant post-solution activity in dependent claims does not render invention patentable); *OIP Technologies, Inc.,* 2012 WL 3985118, * 16 n.14 (dependent claims that don't teach anything new cannot rescue invention from ineligibility).  Claims 2 and 3, for example, recite "permitting a relative interaction between the 3D representation of the glasses and the 3D face model" and "permitting a view of the 3D face model with the 3D representation of the glasses on from a chosen perspective."  '824 patent at Claims 2-3.  They recite no structures that would tie the claims to a particular machine beyond the general-purpose computer of the independent claims.   Claims 4 and 5 recite trivially obvious token extensions of the independent claims, like allowing a user to select one pair of glasses from multiple choices.  Claims 6 and 7 add nothing more than the capacity do perform the method over a network and using the Internet.  The remaining dependent claims are not materially different.  None of them save the invention from unpatentability.

**D.      No Claim Construction or Discovery is Necessary to Dispose of This Case.**

Patentability under section 101 is a question of law, not fact.  *In re Bilski*, 546 F.3d at 950.  The Federal Circuit has endorsed adjudicating Section 101 issues at the motion to dismiss stage, and other district courts have followed suit.  *Bancorp Services*, 687 F.3d at 1273; *OIP Technologies, Inc.*, 2012 WL 3985118, *12; *Uniloc USA Inc., et al. v. Rackspace Hosting, Inc., et al*, No. 6:12-CV-375, Dkt. No. 38 (E.D. Tex. March 27, 2013).  In particular, claim construction is not a prerequisite to determining patentability.  *Bancorp*, 687 F.3d at 1273.  Here, there are no conceivable claim construction disputes that are material to patentability.  The only thing in the claims that approaches a term of art is "3D face model," and that term is explicitly defined in the patent specification as meaning " represented graphically in 3-dimensions."  '824 Patent at 5:54-57.  Where a patentee acts as his own lexicographer and clearly assigns a term a special definition, that definition is conclusive.  *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979-80 (Fed. Cir. 1995).  And there is no plausible construction of any other term, including "interactive platform," that can serve to tie the claims to a particular machine.

<u>CONCLUSION</u>

The '824 patent consists of unpatentable claims because the process claimed is not tied to a particular machine or apparatus, does not transform a particular article into a different state or thing, and is instead directed to an abstract idea that would be wholly preempted if the '824 patent is valid.  Accordingly, this Court should dismiss Plaintiff's Complaint in its entirety, with prejudice.  Defendant requests that the Court hold oral argument on this motion.

Dated:  April 29, 2013

MANNING CURTIS BRADSHAW
& BEDNAR LLC


By: /s/ Jess M. Krannich
      Utah Bar No. 14398
      Attorney for Defendant
      DITTO TECHNOLOGIES, INC.

## CERTIFICATE OF SERVICE

I certify that on April 29, 2013 the foregoing was served on the below counsel of record via the Court's CM/ECF system:

> Mark A. Miller
> Bryan G. Pratt
> Christopher B. Hadley
> Holland & Hart LLP
> 222 South Main Street, Suite 2200
> Salt Lake City, UT 84101
> *Attorneys for Plaintiffs*

/s/ Jess M. Krannich