**Mark A. Miller, 9563**
mmiller@hollandhart.com
**Bryan G. Pratt, 9924**
bgpratt@hollandhart.com
**Christopher B. Hadley, 14055**
cbhadley@hollandhart.com
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **1-800 CONTACTS, INC. d/b/a GLASSES.COM**, a Delaware corporation and Utah d/b/a, <br><br> Plaintiff, <br><br> vs. <br><br> **DITTO TECHNOLOGIES, INC.**, a California corporation, <br><br> Defendant. | **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> Case No. 2:13-cv-00145 <br><br> Judge David O. Nuffer <br><br> ORAL ARGUMENT REQUESTED |

Plaintiff 1-800 CONTACTS, Inc. d/b/a Glasses.com ("Glasses.com" or "Plaintiff") respectfully submits this memorandum opposing Defendant Ditto Technologies, Inc.'s ("Ditto") Motion to Dismiss as set forth below.

## <u>INTRODUCTION</u>

Glasses.com has properly and sufficiently pleaded a claim of patent infringement against Ditto.  *See* Complaint (Dkt. 2).  This is uncontested.  Ditto does *not* argue that

Glasses.com failed to plead a claim for patent infringement; nor does Ditto challenge the sufficiency of the allegations in Glasses.com's Complaint.  Instead, Ditto's Motion, while purportedly brought under Rule 12(b)(6), seeks summary judgment that Glasses.com's U.S. Patent No. 7,016,824 ("the '824 patent") is invalid.  Ditto brings this substantive validity challenge before any discovery has occurred and before the Court has had an opportunity to construe the asserted patent claims.  That is not what Rule 12(b)(6) is for, and summary judgment is grossly premature at this stage.  Because Ditto does not challenge the sufficiency of the allegations of the Complaint, Ditto's Motion must be denied.

Ditto also fails on the substantive merits of its summary judgment arguments.  The invention claimed in the '824 patent falls squarely within the broad scope of patent-eligible subject matter under 35 U.S.C. § 101.  The '824 patent claims a digital image processing system that receives a 3D face model, combines the 3D face model with a 3D representation of eyeglasses, and then displays the combined digital image in an interactive platform on a computer display screen to enable a user to virtually try on eyeglasses.  The claimed invention plainly satisfies *both* the transformation and machine tests, either of which is sufficient to meet the low hurdle of patent eligibility under § 101.

Moreover, for Ditto to prevail on this Motion, the Court must accept Ditto's baseless claim construction arguments.  First, Ditto's arguments rest on the ridiculous position that the claim term "interactive platform" encompasses "anything" including a Mr. Potato Head doll.  The Court would also have to accept Ditto's argument that a "3D

face model" does not refer to only digital images, but can include chiseling a face from stone or sketching a face with pencil and paper. These claim construction positions, which form the foundation of Ditto's Motion, find no logical support in the '824 patent and cannot be reasonably accepted. Any genuine analysis of the '824 patent reveals that the invention of the '824 patent deals exclusively with digital images and requires a computer display screen to operate. Ditto's absurd arguments to the contrary expose the fallacy in its Motion.

Ditto cannot meet the exacting burden of proving invalidity by clear and convincing evidence here, particularly in the context of a motion to dismiss under Rule 12(b)(6). The Court should deny Ditto's Motion.

## BACKGROUND

Ditto begins with an irrelevant recitation of events designed to improperly play upon the Court's sympathies. In addition to being irrelevant, Ditto's story is factually inaccurate. Discovery will reveal that Glasses.com began developing its 3D virtual try-on system before Ditto was even formed as a company, and that Glasses.com had a working virtual try-on application long before Ditto launched their infringing website application. In performing its due diligence in this regard, Glasses.com discovered the '824 patent and realized it either needed to license or own the patent to continue with its business plans. Through a significant amount of time, effort, and resources, Glasses.com purchased the '824 patent covering the 3D virtual try on technology at issue in this case.

Ditto's attempt to garner sympathy based on its purported difficult financial position is inappropriate and immaterial.  District courts do not pick winners and losers in patent cases based on the parties' respective balances sheets.  What matters here is that Glasses.com owns a valid patent that Ditto is infringing.  The Court should not be distracted by Ditto's irrelevant and false story.  As set forth below, the '824 patent plainly claims patent-eligible subject matter.  Ditto's Motion should be denied.

### A.    BACKGROUND OF '824 PATENT

Internet commerce has exploded over the last 15 years.  For many products, consumers can confidently purchase the item online without having to see or touch or examine the item first.  However, as the '824 patent explains, wearable goods like eyeglasses and sunglasses present an obstacle to effective web-based retail commerce.

> [I]t would be very difficult for a business to promote wearable goods online, such as footwear, glasses and accessories. … Eyeglasses are [one] example.  Unless it is a pair of generic sunglasses, very few consumers would order personalized glasses, such as near-sighted glasses, over the Internet.  Similar reasons are applied because a consumer likes to try on a pair of chosen glasses and see from a mirror how he/she looks with the chosen pair, hence the market for eyeglasses is primarily limited to local retailing.

'824 patent, col. 1ines, 33-49 (Dkt. 2-1).

The invention of the '824 patent represents one effort to facilitate the purchase of eyeglasses online by providing an interactive platform for a consumer to *virtually* try on eyeglasses without having to visit a physical (brick and mortar) store.  *Id*. at col. 1, lines 59-67.  Generally speaking, the invention of the '824 patent combines a 3D face model of the consumer with a 3D representation of eyeglasses, and then displays the

6178876_1

combined digital image to the consumer via a computer screen in an interactive environment that allows the consumer to visualize himself or herself wearing any selected pair of glasses from any selected perspective.  *Id*. at col. 2, lines 11-26.  Every claim of the '824 patent recites this transformation from two separate 3D images to a combined, interactive 3D image by "placing the 3D representation of the glasses" onto "the 3D face model."  *Id*. at col. 13-16.

Because the primary benefit of the '824 patent's invention is to facilitate Internet sales of eyeglasses by enabling a user to virtually try on eyeglasses, an essential element of the invention is the interactive platform displayed via a digital computer screen.  *Id*. at col. 13, lines 2-4 (discussing an advantage of the invention as "the interactive presentation mechanism desired by an online business to permit a user to try or test virtually a selected item[.]").  The invention of the '824 patent is disclosed and claimed in the context of Internet commerce, and the specification expressly ties any reference to "displaying" in the claims to a display screen of a computing device.

> To facilitate the description of the present invention, it is defined herein a display screen or simply a screen is the physical display apparatus in a device, such as a 15 inch CRT or LCD monitor, commonly seen with a personal computer.  Likewise, a screen display or simply display is an image presented on the display screen.  For example, a file that constitutes a display or part of the display may be an HTML, a VRML file, or a plurality of data representing a 3D representation for an item or a 3D model of an object.  A display is displayed on a screen when the file is read or executed by an application or executed by a browser.

*Id*. at col. 5, lines 1-11.  Every claim of the '824 patent recites the "interactive platform" element as being "displayed" on a computer "display screen."  *Id*. at col. 13-16.  In other words, the "interactive platform" recited in the claims is inextricably tied

5

to an interactive presentation on a computer screen that enables the user to interact with the combined face and eyeglasses images by, for example, viewing the images from varying angles or selecting various different glasses to "try on."  This interactive platform is depicted in Figures 6A-6E in the '824 patent.  *Id*. at Figs. 6A-6E (*see* below).  Such an interactive, virtual try on experience could not happen without a computer and a display screen.



**Fig. 6D**

In view of the foregoing background, it is beyond dispute that the '824 patent claims patent-eligible subject matter.

6

## ARGUMENT

I. **GLASSES.COM HAS SUFFICIENTLY PLEADED A CLAIM FOR PATENT INFRINGEMENT**

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). A motion for judgment on the pleadings "should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* (quotation omitted).

The Federal Circuit recently held that a complaint for patent infringement need only give notice to the defendant of the asserted patent and the accused products to survive a Rule 12(b)(6) motion. *See K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, -- F.3d --, 106 U.S.P.Q.2d 1462, 1467 (Fed. Cir. 2013) (reversing district court's dismissal under Rule 12(b)(6)). Specifically, mere compliance with Form 18[1] of the Federal Rules of Civil Procedure "effectively immunizes a claimant from attack regarding the sufficiency of the pleading" under Rule 12(b)(6). *Id.* at 1466. Form 18 requires nothing more than a jurisdictional allegation, a statement of ownership of the patent, a statement that defendant is infringing the patent, and a demand for an injunction and damages, giving the defendant ample notice of the nature of the claims. *Id.* (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)). Glasses.com's Complaint easily meets this simple, notice-pleading standard.

---

[1] Form 18 is a sample patent infringement complaint. A copy of Form 18 is attached as Exhibit C.

6178876_1

The Complaint in this action asserts an allegation of jurisdiction.  Dkt. 2, ¶¶ 4-6.  It also makes a statement that Glasses.com owns the '824 patent.  *Id*. at ¶ 2.  Glasses.com also alleges that Ditto has and is infringing the '824 patent by virtue of its virtual try on application.  *Id*. at ¶¶ 9-10.  Finally, the Complaint gives Ditto notice of its infringement and demands an injunction and damages.  *Id*. at ¶¶ 12-30.  Glasses.com's Complaint is without question sufficient to state a claim for patent infringement.  On this basis alone, Ditto's Motion should be denied.

It is clear that Ditto's Motion really seeks a premature summary judgment by considering the prosecution history of the patent and evaluating the substantive merits of the validity of the '824 patent.  *See, e.g., Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004) ("Where a party has moved to dismiss under Rule 12(b)(6) for failure to state a claim ... and matters outside of the pleadings have been presented to the court for consideration, the court must either exclude the material or treat the motion as one for summary judgment."); *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008) (on a motion to dismiss, "[t]he court ... is 'limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.'" (quoting *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)).  Nevertheless, even if the Court considers the merits of Ditto's summary judgment arguments, Ditto's Motion fails miserably.  As a matter of law, and as set forth in the following sections, Ditto cannot meet its heavy burden of proving by clear and convincing evidence that the claims of the '824 patent are invalid under § 101.

## II.   THE '824 PATENT CLAIMS ELIGIBLE SUBJECT MATTER UNDER SECTION 101

"Whoever invents or discovers *any* new and useful process, machine, manufacture, or composition of matter, or *any* new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

6178876_1

35 U.S.C. § 101 (emphasis added).  The Patent Act expansively defines a patent-eligible "process" as a "process, art, or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material."  35 U.S.C. § 100(b).  The Supreme Court has made it clear that by setting forth these broad categories and definitions of eligible subject matter, Congress intended that a very broad and inclusive scope of subject matters would be eligible for patent protection in order to serve the constitutional objective of the Patent Act of encouraging innovation.  *See Diamond v. Chakrabarty*, 447 U.S. 303, 308–09 (1980) ("In choosing such expansive terms as 'manufacture' and 'composition of matter,' modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope."); Bilski, 130 S.Ct. 3218, 3225 (2010) ("Congress took this permissive approach to patent eligibility to ensure that 'ingenuity should receive a liberal encouragement.'" (quoting *Chakrabarty*, 447 U.S. at 308)).

Decades of precedent have established three very narrow, judicially created exceptions to the broad categories of patent-eligible subject matter in § 101: "laws of nature, natural phenomena, and abstract ideas[.]"  *Diamond v. Diehr*, 450 U.S. 175, 185 (1981).  It is dangerous and improper to apply these exceptions too aggressively, because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012).  Taken too far, the exceptions could swallow patent law entirely.  Therefore, "in recognition of the clear congressional mandate that a very broad swath of inventions be eligible for patent protection," the

6178876_1

Federal Circuit has cautioned that abstractness should not be used to invalidate a claim under § 101 unless the abstractness is exceptionally clear.  *Dealertracker, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) ("[F]or abstractness to invalidate a claim it must exhibit itself so manifestly as to override the broad statutory categories[.]") (internal citation and quotations omitted).

As the party challenging the validity of the '824 patent, Ditto bears the burden of clear and convincing evidence for this defense.  *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2242 (2011).  *See also Oakley, Inc. v. Sunglass Hut Int'l*,  316 F.3d 1331, 1338-39 (Fed. Cir. 2003) ("Because an issued patent is presumed to be valid, 35 U.S.C. § 282 (2000), the evidentiary burden to show facts supporting a conclusion of invalidity is clear and convincing evidence.").  This heavy evidentiary burden combined with the difficult Rule 12(b)(6) standard requiring all inferences and allegations to be granted to Glasses.com imposes a daunting hurdle that Ditto simply cannot overcome in this case.  The following analysis proves that the '842 patent claims a patent-eligible invention and does not come anywhere near the exceptional cases that raise a genuine eligibility inquiry under § 101.[2]

---

[2] Even if the Court were inclined to find any merit in Ditto's argument that the '824 patent should be considered among the exceptional "abstract idea" patents, there is a high degree of instability in the law on this point.  Just a few weeks ago, the Federal Circuit issued an *en banc* decision addressing the scope of the "abstract idea" exception to eligibility under § 101.  *See CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, Case No. 2011-1301 (May 10, 2013) (attached as Exhibit A).  The attached *CLS* decision does not include a single opinion about this topic to which a majority of judges joined.  Instead, the *per curium* decision in *CLS* is a single paragraph followed by *six* concurring and dissenting opinions (totaling 135 pages) reflecting an *even split* among the Federal Circuit on the scope of the abstract idea exception.  *Id*. at Chief Judge Rader Opinion, p. 1-2, n. 1 ("Accordingly, though much is published today discussing the proper approach to the patent eligibility inquiry, nothing said beyond our judgment has the weight of precedent.").

### A.   THE SUBJECT MATTER OF THE '824 PATENT FALLS SQUARELY WITHIN THE SCOPE OF PATENTABLE SUBJECT MATTER UNDER SECTION 101

The difficult and exceptional questions of patent-eligibility under § 101 have largely been presented with respect to the fringes of various technology groups. Such questions are almost always raised when the patent appears to claim nothing more than the mere analysis of data to reach a conclusion. These types of patents address processes that could seemingly be done mentally, even if they try to employ computer software to perform the process faster. For example, some of these controversial process patents try to claim methods of performing medical-related diagnostics. *See Mayo Collaborative Services v. Prometheus Labs. Inc.*, 132 S.Ct. 1289, 1298 (2012) (finding invalid a patent for a method of calibrating the proper dosage of a drug to treat autoimmune diseases); *Classen Immunotherapies, Inc. v. Biogen Idec*, 659 F.3d 1057, 1067-68 (Fed. Cir. 2011) (finding invalid a patent for a method of screening immunization schedules). Most relate to mere financial data analysis. *See, e.g., In re Bilski*, 545 F.3d 943, 966 (Fed. Cir. 2010) (finding invalid a patent for a method of hedging risk in field of commodities trading); *OIP Tech., Inc. v. Amazon.com, Inc.*, 2012 WL 3985118 at *4-5 (N.D. Cal. Sept. 11, 2012) (finding invalid a method of pricing a product for sale); *Dealtracker, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) (finding invalid a patent for methods of processing credit card applications); *Bancorp Services LLC v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266 (Fed. Cir. 2012) (finding invalid a patent for a method for tracking and managing life insurance policies); *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1376 (Fed. Cir. 2011)

---

(cont'd.)..
Deference should be given to the Patent Office's decision to issue the '824 patent in view of the controversial and unsettled nature of the law on abstractness.

(finding invalid a patent for a method of verifying the validity of a credit card transaction); *Fort Properties, Inc. v. American Master Lease LLC*, 671 F.3d 1317, 1322 (Fed. Cir. 2012) (finding claims invalid because they merely "disclose an investment tool not requiring the use of a computer"). These are the cases Ditto relies on in its Motion, and they are plainly inapposite, as none of the cases deals with a digital image processing system that results in displaying modified images to the user.

In contrast to the narrow range of patents encompassed within the limited "abstract idea" exception, the vast majority of software-related patents fall squarely and unambiguously within the broad scope of patent-eligible subject matter under § 101. *See CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, Case No. 2011-1301, Judge Lourie Opinion at 18 (Exhibit A) ("Does the claim pose any risk of preempting an abstract idea? In most cases, the answer plainly will be no."); *Bancorp*, 687 F.3d at 1277 ("Modern computer technology offers immense capabilities and a broad range of utilities, much of which embodies significant advances that reside firmly in the category of patent-eligible subject matter."). Both the Federal Circuit and the Patent Office "have long acknowledged that . . . advances in computer technology—both hardware and software—drive innovation in every area of scientific and technical endeavor" and "deserve patent protection." *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1329 (Fed. Cir. 2011).

Unlike the controversial patents at issue in the various § 101 cases cited by Ditto, the '824 patent claims a digital image processing invention that clearly constitutes patent-eligible subject matter. The invention of the '824 patent does not merely use a computer to automate the analytical process of approving a credit application, or prescribing a medication, or diagnosing a disease, or evaluating the risk of an investment, or any other analogous process. Instead, it

12

receives a 3D face model, combines that 3D face model with a 3D representation of glasses, and then displays that combined digital image to the user on a computer screen in an interactive environment that allows a user to interact with the combined image by selecting different glasses to try on or manipulating the combined image to view it from various perspectives.  This type of technology falls squarely within the expansive bounds of § 101.

For example, in *Research Corporation Technologies, Inc. v. Microsoft Corporation*, the patent in dispute claimed a digital image processing method for "half-toning" a digital color image using a "blue noise mask."  627 F.3d 859, 865 (Fed. Cir. 2010).  The district court found the patent invalid under § 101 for claiming an ineligible "abstract idea."  *Id*. at 866.  The Federal Circuit reversed, explaining that the "abstract idea" exception for process patents cannot be defined "beyond the recognition that this disqualifying characteristic should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter[.]"  *Id*. at 868.  The court also explained that "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act."  *Id*. at 869.  Finally, the court held that the fact that the patent claims incorporate algorithms and formulas as part of the invention does "not bring this invention even close to abstractness that would override the statutory categories[.]"  *Id*.

Similarly, the Central District of California recently confronted a § 101 challenge to another digital image processing patent, and concluded the claimed invention did *not* fall within the narrow "abstract idea" exception.  *See Oplus Tech. Ltd. v. Sears Holding Corp.*, 2013 WL 1003632 (C.D. Cal., March 4, 2013) (attached as Exhibit B).  The patent in that case claimed a

13

process for modifying video signals.  *Id*. at *2.  The court analyzed the relevant precedents from

the Supreme Court and the Federal Circuit and astutely observed:

> The Federal Circuit perceives Section 101 as a "coarse eligibility
> filter." … Section 101 is best suited, therefore, to render ineligible
> those patents that are so manifestly abstract that they must be dealt
> with on patent-eligibility grounds, lest they survive other validity
> challenges and usurp what rightfully belongs in the public domain.
> In sum, section 101 tolerates deeming certain patents "eligible" if
> they are not so manifestly abstract as to override the statutory
> language of section 101[.]
>
> * * * *
>
> Also, Section 101 has not generated an extensive body of case law
> and is thus less firm and more controversial a ground on which to
> invalidate a patent.  As such, where a claim at issue is factually
> similar to a claim which the Federal Circuit recently found eligible,
> *e.g.*, the RCT[3] claim, the Court has ample reason to exercise
> caution in applying section 101.

*Id*. at *9.  The California court then cited the Federal Circuit's decision in *Research Corp.*

(*supra*) addressing digital image processing to conclude that the disputed patents were not

ineligible abstract ideas.  *Id*. at *10 ("Both claims recite methods of processing an image[.]").  In

reaching its decision, the court provided the following counsel.

> Section 101 analysis is treacherous.  Abstract ideas lend
> themselves to identification rather than definition.  But where, as
> here, the Federal Circuit inserts a point on the patent-eligibility
> side of the spectrum for an invention like the one claimed in RCT,
> Section 101 is a doubtful defense for factually similar claims such
> as the ones Vizio challenges in this case.

*Id*. at *14.

---

[3] RCT is a reference to the Federal Circuit's decision in *Research Corp. Technologies, supra*.

14

The very same analysis should apply here.  The invention claimed in the '824 patent is far more analogous to the digital image processing patents that were validated in *Oplus* and *Research Corp.* than it is to the mere analytical processes in the cases cited by Ditto.

In the instant Motion, Ditto is pressing a very controversial position, asking this Court to step out on the ledge and essentially make a policy-based decision[4] to invalidate Glasses.com's digital image processing invention under the most unsettled area of Patent Law today.  Just like the arguments rejected in the *Oplus* case, Ditto's view of abstractness effectively denies patent eligibility to all software inventions, because any process could be reduced to some level of abstraction.  *See, e.g., Oplus*, 2013 WL at *12 ("If similar analogies to *Flook* become Section 101 law, then *all software is ineligible for patent protection*.") (emphasis in original); *Mayo*, 132 S. Ct. at 1293 ("[T]oo broad an interpretation of this exclusionary principle could eviscerate patent law. For all inventions at some level embody, use, reflect, rest upon, or apply … abstract ideas.").  Ditto's position cannot be sustained.  The '824 patent clearly claims patent-eligible subject matter under § 101.

---

[4] *Id.* at *9 ("Validity under § 101 presents issues to the courts that are complex, difficult, and saturated by fundamental policy considerations.  …  This is an issue that often far transcends the inherently bounded questions of patentability under §§ 102 and 103, or enablement under § 112. The courts in this area are given rather thin material to work with: some fairly ancient general phrases (machine, manufacture, composition of matter), and some quite general categories of exception (products of nature, natural phenomena, abstract ideas).  To fashion a holding in a § 101 case out of these materials will often require a court to stretch the available authority in an effort to apply it to specific facts.  It is therefore to be expected that rulings in these cases will often engender controversy and strain the credibility of the courts in charge.  Therefore, the same logic that leads the Supreme Court to avoid its most delicate subject matter ought to apply in the case of patents and § 101.") (quoting *Dennis Crouch & Robert P. Merges, Operating Efficiently Post-Bilsi Ordering Patent-Doctrine Decision-Making,* 25 Berkley Tech. L.J. 1673, 1683 (2010)).

### B.   THE '824 PATENT SATISFIES THE MACHINE AND TRANSFORMATION TESTS

The claimed invention of the '824 patent is undoubtedly a "process" under § 101.  Ditto contends this process is impermissibly abstract and, therefore, ineligible for patent protection. Ditto is wrong, and indeed tacitly concedes that the '824 patent is drawn to patent-eligible subject matter.  Dkt. 16 at 21 ("Had they come up with a particular computerized interface for demonstrating eyeglasses using a web browser and a digital camera, they might have had a patentable invention.").

Although not the exclusive test for evaluating patent eligibility under § 101, the machine or transformation test "is a useful and important clue" for doing so.  *Bilski*, 130 S. Ct. at 3227. This is the test Ditto's Motion rests on.  As demonstrated below, the '824 patent easily meets both aspects of the machine or transformation inquiry.

#### 1.   The Invention of the '824 Patent Transforms Separate 3D Images Into a New Interactive Image

Ditto contends in conclusory fashion that "requesting a 3D face model from a user, determining its characteristics, retrieving a 3D representation of a pair of eyeglasses, and juxtaposing the 3D representation over the face model is not a 'transformation.'"  Dkt. 16 at 17. However, Ditto cannot explain why this is so, as that statement plainly describes a transformation.  The invention of the '824 patent combines a 3D face model with a 3D representation of eyeglasses, transforming them from the user's perspective into a new composite image displayed via the interactive platform.  *See, e.g.,* '824 patent at col. 8, lines 24-38 ("[T]he interactive environment shows a combined or integrated view of the 3D representation and the 3D model.").

16



Every claim of the '824 patent recites this transformation. *See* '824 patent at claim 1 ("placing the 3D representation of the glasses onto a default position with respect to the 3D face model"); claim 12 ("placing a 3D representation of one of the pairs of eyeglasses onto 3D face model"); claim 22 ("placing a 3D representation of one of the pairs of eyeglasses onto the 3D face model"); claim 25 ("the user is able to virtually place the selected pair of eyeglasses on or off the 3D face model"); claim 29 ("placing the 3D representation of the glasses onto a default position with respect to the 3D face model"). This is not a mere collection or organization of data. The invention claimed in the '824 patent transforms the separate 3D model and 3D representation into an integrated view of the two combined.

Moreover, the display of the combined images is *interactive* in a way that allows the user to manipulate the image and view himself or herself from varying perspectives wearing selected eyeglasses. One example of such an interactive display is shown in Figure 9 of the '824 patent (reproduced below).

17



In short, the claimed invention of the '824 patent transforms the separate 3D images into an integrated and interactive display of the combined 3D images.  Ditto provides absolutely no support for its *ipse dixit* statement that no transformation occurs.  *For this reason alone*, the '824 patent claims satisfy the very low threshold of eligible subject matter under § 101.  Ditto's Motion should be denied.

> **2.** The Invention of the '824 Patent Is Also Meaningfully Tied to a Machine

The '824 patent claims also satisfy the machine test.  "In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, *i.e.*, through the utilization of a computer for performing calculations."  *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010).  In other words, "a computer must be integral to the claimed

18

invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp*, 687 F.3d at 1278 ("The computer required by some of Bancorp's claims is employed only for its most basic function, the performance of repetitive calculations, and as such does not impose meaningful limits on the scope of those claims.").

Here, a computer is an integral and meaningful part of the claimed invention. Every claim of the '824 patent expressly limits the interactive platform to a digital display screen. *See* '824 patent at claim 1 ("an interactive platform that can be displayed on a computing device"), claim 12 ("displaying on a display screen of a computing device an interactive platform"), claim 22 ("displaying an interactive platform"), claim 25 ("the client computing device subsequently displays an interactive try-on platform"), claim 29 ("an interactive platform that can be displayed on a computing device"). The use of a digital display screen in the '824 patent claims is nothing like the insignificant use of a computer to automate and expedite simple calculations that could be performed in the human mind. Instead, the computer and its display screen are an essential element to facilitate the interactive platform so a user can view themselves wearing various style of eyeglasses without having to physically try them on in a store. Without a display screen and computer, there can be no interactive platform on which to display the 3D digital images. The computer-related limitations in the claims of the '824 patent clearly provide substantive and meaningful limits to the claims.

In *Bancorp*, for example, the Federal Circuit distinguished the image processing invention of *Research Corp.* as follows: "the method in *Research Corp.*, which required the manipulation of computer data structures (the pixels of a digital image and the mask) and the

output of a modified computer data structure (the halftoned image), was dependent upon the

computer components required to perform it." *Bancorp*, 687 F.3d at 1279.  The court made the

same distinction in *Cybersource*.  *See* 654 F.3d at 1367 ("Because the method required the

manipulation of computer data structures (*e.g.*, the pixels of a digital image and a two-

dimensional array known as a mask) and the output of a modified computer data structure (a

halftoned digital image), the method could not, as a practical matter, be performed entirely in a

human's mind.").  The same analysis applies here.  The claims of the '824 patent require the

manipulation of digital images by merging a 3D face model with a 3D representation of

eyeglasses.  The '824 patent claims also require the output of the combined view of the two

images via an interactive platform on the computer's display screen.  These claims are

meaningfully dependant on a computing device with a display screen.  Thus, like the invention in

*Research Corp.*, and unlike the mere analytical methods of *Bancorp* and similar cases, the claims

of the '824 patent have meaningful computer hardware limitations and, therefore, satisfy the

machine test.

Ditto's analysis is flawed for several reasons.  First, Ditto performs an element by

element analysis of the claims, isolating each limitation and evaluating whether it alone requires

a computer or machine to perform.  Dkt. 16 at 17-19.  The Supreme Court has made it very clear

that such an analysis is improper.

> In determining the eligibility of respondents' claimed process for
> patent protection under section 101, their claims must be
> considered as a whole.  It is inappropriate to dissect the claims into
> old and new elements and then to ignore the presence of the old
> elements in the analysis.  This is particularly true in a process
> claim because a new combination of steps may be patentable even

> though all the constituents of the combination were well known
> and in common use before the combination was made.

*Diehr*, 450 U.S. at 188.

Next, Ditto ignores the context of the '824 patent to contend that the computer limitations in the claims are just meaningless post-solution elements.  There can be no dispute that a computer and computer display screen are absolutely necessary to perform the claimed method of the '824 patent.  The '824 patent makes it clear that the claimed system cannot be performed without a computer and display screen.  *See, e.g.,* '824 patent at col. 5, lines 1-11.  The display screen limitations in the claims are not included to simply make the process run faster or better; the process *cannot* occur at all without them.  Because the display screen provides a meaningful limitation to the claimed invention, Ditto's Motion fails.

Ditto also contends that the prosecution history of the '824 patent—where some computer-related limitations were added to the claims before it was granted—somehow supports its invalidity challenge.  *See* Dkt. 16 at 49.  Ditto is wrong.  To the contrary, the fact that the Patent Office examiner thoroughly considered patent eligibility under § 101 and allowed the claims to issue *strengthens* the validity of the '824 patent and weakens Ditto's position.  That is, "[w]hen an attacker simply goes over the same ground traveled by the PTO [as Ditto is doing here], part of the burden is to show that the PTO was wrong in its decision to grant the patent." *Tokai Corp. v. Easton Enterprises, Inc.*, 632 F.3d 1358, 1378 (Fed. Cir. 2011) (quoting *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1360 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 821).  Thus, the Patent Office's conclusion that the claims of the '824 patent satisfy the eligibility requirements of § 101 is entitled to deference and makes it more difficult for Ditto to

meet its already high burden of proof here.  Because the '824 patent claims are meaningfully limited to the use of a computer display screen, Ditto's Motion should be denied.

### C.      THE '824 PATENT DOES NOT PREEMPT AN ABSTRACT IDEA

The overarching purpose of the narrow judicially-created exceptions to the broad categories of eligible subject matter under § 101 is to prevent the "monopolization" of the "basic tools of scientific and technological work," which "might tend to impede innovation more than it would tend to promote it."  *See Mayo*, 132 S. Ct. at 1293.

Here, Ditto contends that the abstract idea claimed in the '824 patent is the "idea of remotely demonstrating eyeglasses using 3D graphics."  Dkt. 16 at 15.  However, the claims of the '824 patent do not wholly preempt this general idea as Ditto contends.  Ditto is simply wrong is asserting that the claims of the '824 patent could prevent anyone from offering "a 3D demonstration of eyeglasses on a user's face … whether with a mall kiosk, a Java applet on a website, or 3D-printed mannequins."  Dkt. 16 at 9.  There are a variety of ways one can use 3D graphics to demonstrate eyeglasses without infringing the claims of the '824 patent.  For example, one could create a rotatable 3D image of eyeglasses without a face model and display it online or at a kiosk for customers to view and evaluate.  Alternatively, 3D Face models of celebrities wearing various eyeglasses could also be used to demonstrate eyeglasses online.  The '824 patent clearly does not preempt all uses of 3D graphics to remotely demonstrate eyeglasses.

The methods and systems claimed in the '824 patent require an interactive platform to enable the consumer to see and manipulate a 3D image of themselves wearing a 3D representation of eyeglasses.  There must be a 3D face model *of the user.*  There must also be a 3D representation of eyeglasses.  Next, the two 3D images must be combined.  Finally, the

combined image must be displayed via an interactive platform on a computer display screen so that the user can interact with the combined image by, for example, moving the image from side to side to view the user's face from varying perspectives or changing the eyeglasses placed on the face model. These claims are *not* directed to "an abstract idea preemptive of a fundamental concept or idea that would foreclose innovation in this area." *Dealertracker*, 674 F.3d at 1333. Instead, the '824 patent claims clearly recite a specific *application* of the idea of using 3D graphics to demonstrate eyeglasses (*i.e.*, combined 3D images displayed in an interactive platform). That is all § 101 requires. *See Bilski*, 130 S. Ct. at 3230 ("[W]hile an abstract idea, law of nature, or mathematical formula could not be patented, an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." (emphasis in original) (internal quotation marks omitted)); *Diehr*, 450 U.S. at 187 ("It is now commonplace that an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." (emphasis in original)). Ditto's Motion must be denied.

### III.    DITTO'S MOTION IS, AT THE VERY LEAST, PREMATURE

As demonstrated above, the '824 patent does not come anywhere near the narrow "abstract idea" exception to the otherwise broad and inclusive statutory categories of eligible subject matter under § 101. Accordingly, the Court can and should deny Ditto's Motion on the merits right now, finding an a matter of law that the '824 patent is not invalid under § 101.

Alternatively, and at the very least, Ditto's Motion is premature. As stated earlier, Ditto's Motion seeks summary judgment; it does not genuinely challenge the

sufficiency of Glasses.com's Complaint.  Yet, there has been no discovery and no claim construction in this case.  The law is clear that claim construction is *generally* a prerequisite to a § 101 challenge.  That is, although "claim construction is not an inviolable prerequisite to a validity determination under § 101[,] … it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."  *Bancorp*, 687 F.3d at 1273-74 ("Before proceeding to our § 101 analysis, we construe the claims[.]").  *See also CLS*, Judge Lourie Opinion at 18 (Exhibit A) ("In short, one cannot meaningfully evaluate whether a claim preempts an abstract idea until the idea supposedly at risk of preemption has been unambiguously identified.  Although not required, conducting a claim construction analysis before addressing § 101 may be especially helpful in this regard by facilitating a full understanding of what each claim entails.").

The only time claim construction would not be necessary would be where there is no dispute concerning the meaning of the relevant claim terms.  Ditto says this is such a case.  *See* Dkt. 16 at 16 (" …the meaning of the claims is clear, and does not turn on claim construction or discovery …").  Yet, Ditto's "abstractness" arguments are expressly based on Ditto's proposed meaning for certain claim terms.  For example, Ditto's contention that the '824 patent claims are impermissibly abstract relies heavily on the ridiculous idea that the claim term "interactive platform" is broad enough to encompass "a Mr. Potato Head doll."  *Id*. at 17.  *See also id*. at 8 ("but 'interactive platform' is a term broad enough to mean almost anything.").  Ditto also relies on its own construction for other claim terms to justify its position.  *Id*. at 17 ("the requirement of

24

a '3D face model' does not entail a computer"), at 18 ("limitations like 'determining characteristics of the 3D face model with respect to a 3D reference frame' … simply claim a mathematical operation").  Ditto cannot genuinely contend that it is not relying on claim construction arguments to support is Motion.

Glasses.com disagrees with Ditto's proposed construction of the '824 patent claims. Ditto's arguments focus on the abstract text of the claims without genuine regard to the context of the written description in the patent.  Such an analysis is wrong as a matter of law.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*, "[T]he specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.").  The specification of the '824 patent is exclusively focused on supporting internet retail commerce by providing an interactive, virtual try-on platform over a network and displayed on a computer screen.  At its most abstract level, the '824 patent introduces the invention as "generally relating to the area of electronic commerce[.]"  '824 patent at col. 1, lines 14-21.  It also describes "interactive test or try-on platform" as using a 3D face model to "electronically and interactively try on a selected pair of glasses."  *Id*.  In describing the problems in the prior art solved by the invention, the '824 patent explains that "the current Internet-based commerce platform lacks 'try on' experiences," and that there is "a need for a mechanism that a user or buyer could 'try on' or test a selected item or service over the Internet before commitment[.]"  *Id*, at col. 1, lines 49-55.  *See also id*. at col. 3, lines 43-44 ("[T]he present invention is implemented to facilitate electronic commerce of eyeglasses.").  Moreover, every claim expressly limits the invention to being displayed on a computer screen.  *Id*. at col. 13-16. Examining the '824 patent as whole, it is beyond genuine

25

dispute that the claimed "interactive platform," "3D face model" and "3D representation of eyeglasses" are limited to digital environments that *require* a computer and a computer display screen.

Nothing in the '824 patent supports Ditto's silly suggestion that the "claimed steps can be implemented with pencil and paper or a wooden block and a chisel." Dkt. 16 at 18. The whole point of the invention is to enable consumers to *virtually* try on eyeglasses without having to go to the optometrist office and physically try them on. A person of ordinary skill in this field would never interpret the claims to encompass chiseling a likeness of oneself out of stone and then placing various pairs of eyeglasses on the stone to evaluate them. How would that be an improvement over physically trying on eyeglasses on one's own face and looking in a mirror? How would that meet the stated need in the prior art to *virtually* try on eyeglasses in connection with purchasing glasses online? Ditto's suggested claim interpretation is frivolous and ignores the context of the '824 patent. The fact that Ditto's Motion rests on its dubious claim construction arguments is alone sufficient to warrant the Motion's denial.

## CONCLUSION

In view of all the foregoing, Ditto's Motion has no basis and should be denied. Glasses.com has sufficiently pleaded a claim of patent infringement. Moreover, the '824 patent claims easily fall within the broad scope of eligible subject matter under § 101. At the very least, the Court should defer ruling on this Motion until the Court has had an opportunity to properly construe the disputed terms in the claims.

26

DATED this 29th day of May, 2013.

          HOLLAND & HART LLP

          /s/  Mark A. Miller
          Mark A. Miller
          Bryan G. Pratt
          Christopher B. Hadley
          *Attorneys for Plaintiff*

6178876_1